IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL RAYMOND JACKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. |
| | ) |
| INNOVATIVE PLASTICS SOUTH CORP., | ) |
| | ) JURY DEMAND |
| Defendant. | ) |

## COMPLAINT

Plaintiff, Michael Raymond Jackson, for cause of action against defendant Innovative Plastics South Corp., states as follows:

### PARTIES

1. Plaintiff Michael Raymond Jackson is a resident of Nashville, Davidson County, Tennessee.

2. Defendant Innovative Plastics South Corp. is a Tennessee corporation with its principal address located in Orangeburg, NY. Defendant operates a manufacturing facility in Davidson County, Tennessee located at 2900 Factory Road.

3. At all times material to this complaint, defendant was a covered employer as defined by the Family and Medical Leave Act (FMLA), 29 U.S.C. §2611(4) and an employer as defined in the Americans with Disabilities Act as amended (ADAAA), 42 U.S.C. §12111(5).

4. Plaintiff worked for defendant at its Davidson County facility for over 15 years until he was terminated from his job on November 10, 2017.

## JURISDICTION AND VENUE

5. This is an action brought under the Americans with Disabilities Act, as amended, 42 U.S.C. §12101 *et seq*, (ADAAA), the Family and Medical Leave Act, 29 U.S.C. §2601, *et seq*. and the common law of Tennessee. This Court has jurisdiction over plaintiff's ADAAA and FMLA claims under 28 U.S.C. §1331 because they are civil actions brought under the laws of the United States. This Court has supplemental jurisdiction of plaintiff's state law claim under 28 U.S.C. §1367(a) because that claim is so related to plaintiff's claims under the ADAAA and FMLA that they form part of the same case or controversy.

6. All conditions precedent to plaintiff's claim under the ADAAA have been satisfied. Following his termination, plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (EEOC). The EEOC issued a Notice of Right to Sue on February 6, 2019. Plaintiff's ADAAA claims are brought within 90 days of his receipt of the Notice of Right to Sue.

7. Venue is appropriate in this judicial district under 28 U.S.C. §1391(b) because defendant is deemed to reside in this district under 28 U.S.C. §1391(c) and because the events forming the basis for plaintiff's claims occurred in this district.

## Factual Allegations

8. Plaintiff worked for defendant from March 29, 2002 until defendant terminated him on November 10, 2017. When he was terminated, plaintiff worked as a Shift Supervisor, reporting to Stan Shackleford.

9. When plaintiff was terminated, and at all times material to plaintiff's claims, plaintiff suffered from different medical conditions and impairments, which included chronic pain associated with a hip fracture, sustained in an accident in 1993, and subsequent surgery, foot neuropathy associated with the same accident, a heart attack suffered in 2015, and a pancreatic disorder.

10. Effective as of October 1, 2017, defendant changed health insurance providers for its group health insurance plan, and it instituted a new health care coverage plan for its employees at the Davidson County facility. In an employee meeting to discuss this change, defendant's Vice President of Operations, Charles Scarboro, who was the highest ranking management employee at the facility, explained to the employees that the change in insurance plans was a cost-saving measure, and he appealed to the employees to try to not use their insurance "unless you're dying" in order to hold down costs.

11. In October 2017, plaintiff was absent from work for a day because of his medical conditions, and as a result of this absence, he was counseled about his attendance record by defendant's HR Manager, Jesse

Lane, and plaintiff's supervisor, Stan Shackelford. In this meeting, plaintiff told Lane and Shackelford about his medical conditions and said that that he was having chest pains and needed to get his heart medications straightened out. He also said that his hip and feet were to the point that he believed he was going to need get something done about his hip, such as a hip replacement, as well something done about his feet, because those conditions were affecting his ability to work by causing him to be in pain during the workday. Plaintiff said that if it was going to be a problem for him to be away from work to see doctors for these issues, he would try to wait until December when the company shut down for Christmas to do that. In response, Lane suggested that plaintiff should apply for FMLA leave in order to avoid any negative consequences to his job that might arise because of any further absences associated with his medical conditions.

12. Following this meeting, plaintiff provided a medical record to Jesse Lane showing that he had a permanent physical impairment due to his hip injury. Lane told plaintiff that that record was "all I need" so that no one "would mess with" plaintiff.

13. On the same day that plaintiff spoke with Lane and Shackelford as detailed in Paragraph 11, plaintiff also told Charles Scarboro the same things he had said to Lane and Shackelford regarding the status of plaintiff's medical conditions, including his heart medications, his need for a hip

4

replacement and medical care for his feet, so that Scarboro would be aware of plaintiff's situation.

14. Prior to plaintiff's informing Scarboro of his medical conditions and need for medical care, he and Scarboro had had a positive working relationship. After plaintiff informed Scarboro of his medical conditions and need for medical care, Scarboro distanced himself from plaintiff, was noticeably less friendly to plaintiff, and even walked through plaintiff's office saying, in an ominous and intimidating way, that he, Scarboro, "needed to fire someone important around here."

15. On November 10, 2017, approximately two weeks after the meetings described in Paragraphs 12 and 13, Scarboro fired plaintiff without warning or notice. The only explanation Scarboro gave for firing plaintiff was that they were "going in different directions." In plaintiff's Separation Notice, defendant stated that plaintiff was fired because of a "management style change."

16. Scarboro has since stated that he fired plaintiff because of the way that plaintiff addressed other employees, giving as examples an instance where Scarboro claimed that plaintiff addressed the Director of Operations in a "combative, rude manner," and an instance in which Scarboro claimed that plaintiff had a verbal altercation with a Quality Auditor.

17. In responding to plaintiff's claim for unemployment benefits, defendant gave a different reason for firing plaintiff. In a letter dated

5

December 6, 2017, defendant took the position that plaintiff was fired "because of his unfair treatment of the employees," and provided an explanation that "[t]here was difficulty keeping new employees on first shift because of [plaintiff's] unwillingness to work with them. Our pool of employees consists of women, foreigners and people of color and [plaintiff] is known for not wanting to work with them. He also refused to follow directives after production meetings."

18. The reasons asserted by defendant for plaintiff's termination as set forth in Paragraphs 15, 16, and 17 are inconsistent and changing, and they are false, without foundation, insufficient to warrant termination, and/or did not actually motivate the decision to fire plaintiff. Instead, these asserted reasons are excuses that are a pretext designed to cover up defendant's actual motive or motives for plaintiff's termination.

## COUNT I
## VIOLATION OF THE ADAAA

19. Plaintiff adopts and incorporates by reference the allegations of Paragraphs 1-18.

20. When he was fired, plaintiff was able to perform the essential functions of his job, with or without a reasonable accommodation, and he was as a result, a "qualified individual" as defined at 42 U.S.C. §12111(8).

21. When he was fired, plaintiff was an individual with a "disability" as that term is defined at 42 U.S.C. §12102(1)(A), (B) and/or (C) because he had a physical impairment that substantially limited him in one

or more major life activities, including but not limited to sitting, standing and walking; he had a record of an impairment that substantially limited him in one or more major life activities; and/or defendant regarded him as having such an impairment as defined at 42 U.S.C. §12102(3).

22. Defendant's actual motivation to terminate plaintiff was based on plaintiff's disability, including but not limited to, the fact that defendant anticipated that plaintiff, and/or plaintiff's medical bills, would be or become a financial burden to defendant or would result in an increase in health insurance costs; that plaintiff might become less efficient in the performance of his job; that plaintiff might have to take leave for medical care; or that defendant might have to make a reasonable accommodation for plaintiff's disability. Defendant therefore terminated plaintiff on the basis of his disability, in violation of the ADAAA, 42 U.S.C. §12112(a).

23. As a result of the violation of the ADAAA alleged in this Count, plaintiff has suffered a loss of earnings, compensation, and employment benefits, both past and future, as well as a loss of employment opportunities, emotional distress, loss of enjoyment of life, embarrassment, inconvenience, and humiliation.

24. In terminating plaintiff in violation of the ADAAA, defendant acted intentionally or with a reckless indifference to plaintiff's federally protected rights.

## COUNT II
## VIOLATIONS OF THE FMLA

25. Plaintiff adopts and incorporates by reference the allegations of Paragraphs 1-18.

26. Plaintiff's hip injury and heart attack as described in Paragraph 9 were serious health conditions as defined in the FMLA, 29 U.S.C. §2611(11) because they were conditions that required inpatient care under 29 C.F.R. §825.114.

27. Despite informing plaintiff that he should apply for FMLA, defendant did not require plaintiff to provide a doctor's certification under 29 C.F.R. §825.305 to support his need for leave under the FMLA, and it failed to provide plaintiff with the eligibility notice required by 29 C.F.R. §825.300(b), the rights and responsibilities notice required by 29 C.F.R. §825.300(c), and the designation notice required by 29 C.F.R. §825.300(d).

28. The decision to terminate plaintiff was motivated by its knowledge of plaintiff's serious health condition and the actual or anticipated need to provide plaintiff with leave under the FMLA for his serious health conditions. By its actions, defendant violated 29 U.S.C. §2615(a)(1) because it interfered with, restrained, or denied the exercise of or the attempt to exercise, plaintiff's rights under the FMLA.

29. As a result of the violations of the FMLA alleged in this Count, plaintiff has suffered a loss of earnings, compensation, and employment benefits, both past and future.

## COUNT III
## FAILURE TO PAY COMPENSATION IN BREACH OF CONTRACT UNDER STATE LAW

30. Plaintiff adopts and incorporates by reference the allegations of Paragraphs 1-18.

31. When he was terminated, plaintiff had earned and was owed a performance bonus by defendant, which in the previous year had amounted to approximately $6,800.

32. The bonus was owed to plaintiff by defendant in accordance with defendant's written and verbal promises, policies, and practices, the totality of which formed an enforceable contract to pay plaintiff the bonus in question.

33. By failing or refusing to pay plaintiff the bonus, defendant breached its contract with plaintiff to do so.

34. As a result of the unlawful actions alleged in this Count, plaintiff has suffered a loss of the value of the bonus.

## PRAYER FOR RELIEF

Based on the allegations of this complaint, plaintiff prays for the following

1. For judgment against defendant under Counts I and II for lost wages, compensation and other employment benefits;

2. For reinstatement under Counts I and II with full accrued benefits, including hours of service for purposes of eligibility for leave under

the FMLA, or judgment against defendant for front pay in lieu of reinstatement;

3. For judgment against defendant under Count I for compensatory damages in an amount to be determined by the jury;

4. For judgment against defendant under Count II for liquidated damages pursuant to 29 U.S.C. §2617 in an amount equal to the amount of wages, compensation, and benefits lost or denied as a result of the violations of the FMLA alleged in Count II;

5. For judgment against defendant under Count I for punitive damages on plaintiff's ADAAA claim in an amount to be determined by the jury;

6. For judgment against defendant under Count III in the amount of the unpaid bonus;

7. For pre-judgment and post-judgment interest;

8. For appropriate injunctive relief requiring defendants to cease and desist from violating the ADAAA and the FMLA as described above;

9. For reasonable attorney's fees, expert witness fees, litigation expenses and costs in accordance with applicable law, including 42 U.S.C. §12205, 42 U.S.C. §1988(b), and 29 U.S.C. §2617(a)(3);

10. For such other general or equitable relief as plaintiff may be entitled to under the premises.

PLAINTIFF DEMANDS A JURY TO TRY THIS CASE.

_____
Wade B. Cowan (S.C. #9403)
Of Counsel, Davies, Humphreys &
Reese
Suite 300
85 White Bridge Road
Nashville, Tennessee 37205
(615) 256-8125
wcowan@dhhrplc.com
Attorney for plaintiff